UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JOSE RAMOS, et al.,

                                        Plaintiffs,                    18-CV-04790 (VB)(SN)

                  -against-                                            **REPORT AND**
                                                                      **RECOMMENDATION**
GREENWICH CATERING CORP., et al.,

                                        Defendants.

-------------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE VINCENT L. BRICCETTI:**

        Plaintiffs move for entry of default judgement against Defendants Greenwich Catering

Corp. d/b/a Turkiss, EB2, Inc. d/b/a Turkiss, EB2 Gourmet, Inc., Mark Kohler a/k/a Max and

Canturk Yilmaz a/k/a John. ECF No. 58. Plaintiffs also seek damages and attorneys' fees. On

April 8, 2019, Judge Briccetti referred this motion to me for a Report and Recommendation. ECF

No. 61. I recommend that Plaintiffs' motion be GRANTED in part and DENIED in part.

## BACKGROUND

        Plaintiffs filed their complaint on May 30, 2018, alleging that Defendants violated the

Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). ECF No. 1. The

complaint states that Defendants knowingly and willfully denied Plaintiffs their minimum wages,

overtime compensation, and spread of hours pay, failed to reimburse Plaintiffs for expenses for

tools-of-the-trade, and failed to provide Plaintiffs with required wage notice and pay stub

information. Compl. ¶¶ 79-116. Plaintiffs sought their unpaid minimum wages, overtime

compensation, spread of hours wages, reimbursement for expenses, liquidated damages, and attorney's fees and costs. Compl. ¶ 3-4.

Plaintiffs filed affidavits of service as to EB2 Gourmet, Inc., EB2, Inc., Greenwich Catering Corp., and Mark Kohler, an owner, director, and/or managing agent of Greenwich Catering Corp., indicating that Defendants had been served on June 11 and 15, 2019. ECF Nos. 7-10. See Compl. ¶ 25-30. Defendants did not respond to the complaint. On July 16, 2018, the Court directed Plaintiffs to submit a status letter discussing the status of service of the complaint and, to the extent the Defendants were in default, to propose a schedule for a motion for entry of default. ECF No. 13. Plaintiffs filed a status letter, ECF No. 15, indicating that all Defendants had been served and that none had filed an answer. Plaintiffs moved for entry of default on August 16, 2018, ECF Nos. 17, 19-22. The Court directed Plaintiffs to file a motion for default judgment by September 7, 2018. ECF No. 29. On September 6, 2018, Plaintiffs requested an extension of time and indicated their intention to add additional parties to the complaint. ECF No. 29.

On September 21, 2018, Plaintiffs filed the first amended complaint ("FAC"), adding Canturk Yilmaz, another owner, officer, director and/or managing agent of Greenwich Catering Corp., as a Defendant. ECF No. 31. See FAC ¶ 31-39. Yilmaz was served on November 2, 2018. ECF No. 37. When the deadline for Defendants to respond to the FAC expired, the Court directed Plaintiffs to again request entry of default. ECF No. 44. Plaintiffs moved for default on January 18, 2019, which the Clerk of Court entered. ECF Nos. 46-50, 52-60. On April 5, 2019, Plaintiffs moved for entry of default judgment. See ECF No. 58 ("Plaintiffs' Brief"). On April 19, 2019, Plaintiffs filed an affidavit of service indicating that the motion for default judgment

had been served on all Defendants. ECF No. 63. Defendants have not opposed or otherwise responded to Plaintiffs' motion.

## DISCUSSION

### I.   Legal Standard

Rule 55 provides that a party "against whom a judgment for affirmative relief is sought" has defaulted when it "has failed to plead or otherwise defend" against the claim. Fed. R. Civ. P. 55(a). On plaintiff's motion and once a certificate of default is entered by the Clerk of Court, the court may enter a default judgment against a defaulting defendant. See Fed. R. Civ. P. 55(b)(2). "[A] default is an admission of all well-pleaded allegations against the defaulting party." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004). But a defaulting party "does not admit conclusions of law," and the district court must determine, as a matter of law, whether plaintiff's allegations establish the defendant's liability. See Yi Feng Leather Int'l LTD v. Tribeca Design Showroom, LLC, No. 17-CV-05195 (AJN), 2019 WL 4744620, at *1 (S.D.N.Y. Sept. 30, 2019) (citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)).

### II.   Default Judgment

#### A.  FLSA Liability

Plaintiffs first allege that Defendants violated the FLSA by failing to compensate them at the statutory minimum wage and by failing to pay them overtime compensation. FAC ¶¶ 79-86, 91-98. To plead a FLSA claim, a plaintiff must show that "(1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." Pelgrift v. 335 W. 41st Tavern Inc., No. 14-CV-8934 (AJN),

2017 WL 4712482, at *7 (S.D.N.Y. Sept. 28, 2017) (quoting Jiaren Wei v. Lingtou Zhengs Corp., No. 13-CV-5164 (FB)(CLP), 2015 WL 739943, *5 (E.D.N.Y. Feb. 20, 2005)). Plaintiffs adequately plead the first prong by alleging that the corporate defendants employ at least two employees and have annual gross sales greater than $500,000. FAC ¶¶ 11, 16, 21. See 29 U.S.C. § 203(s)(1)(A)(i)-(ii) (an "enterprise" has employees and a gross volume of sales made or business done not less than $500,000). Plaintiffs also properly allege that they are employees. An employee is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015) ("Insofar as Plaintiffs' complaint alleges that Defendants employed Plaintiffs within this statutory meaning '[i]t follows . . . that for purposes of this default, [they] qualif[y] as . . . 'employee[s]' under the FLSA.'") (citing Garcia v. Badyna, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014)). Finally, Plaintiffs, who were helpers/delivery workers, are not exempt from FLSA's minimum wage and overtime requirements. See id. (describing exemption categories).

Plaintiffs also sufficiently plead that the individual defendants, Mark Kohler and Canturk Yilmaz, are liable as employers under FLSA. The definition of "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This definition is interpreted expansively so that the statute may "have 'the widest possible impact in the national economy.'" Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)). To be an "employer," an individual defendant must "must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d Cir. 2013). Courts consider four factors to determine whether an individual is an "employer": "whether the alleged employer (1) had the power to hire and fire the

employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (citing Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)) (internal quotation marks omitted). Employment is a "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." Id. at 104.

Plaintiffs allege that Kohler "makes all business decisions" at Greenwich Catering Corp., EB2, Inc., and EB2 Gourmet "including but not limited to the amount in salary the employee[s] will receive and the number of hours employees will work." FAC ¶¶ 26, 28, 30. Because Plaintiffs have satisfied two of the four economic reality factors (determining pay and controlling schedules) and alleged that Kohler "made all business decisions," at the companies, I find that the Plaintiffs have sufficiently pleaded that he is an employer. See Irizarry, 722 F.3d at 112 (CEO was employer where he had financial control over company). As for Yimlaz, Plaintiffs allege that he "makes all business decisions" at Greenwich Catering Corp. and EB2, Inc., and "participated in [the] day-to-day operations" at EB2 Gourmet, Inc. Id. at ¶¶ 32, 34, 36. Plaintiffs also state that Yimlaz made decisions about employee salary and hours at Greenwich Catering Corp. and EB2, Inc. Id. at ¶¶ 32, 34. For the same reasons as Kohler, I find that Plaintiffs have pleaded that Yilmaz was an employer.

### B.  New York Labor Law Liability

Plaintiffs also claim that the Defendants violated NYLL's minimum wage, overtime pay, spread of hours pay, expense reimbursement, notice, and pay stub requirements. FAC ¶¶ 87-90, 99-116. The NYLL's definition of employee and employer are almost identical to the FLSA's, but NYLL does not require that a defendant achieve a certain minimum in sales to be liable. See Pelgrift, 2017 WL 4712482, at *7. See also NYLL §§ 651(5)-(6). Because Defendants are liable

as employers for FLSA purposes, they are also liable under NYLL. See Pelgrift, 2017 WL 4712482, at *7 (noting that the tests for individual defendants under FLSA and NYLL are not meaningfully different).

Under both the FLSA and NYLL, each Defendant is jointly and severally liable for any damages award. See Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011).

### 1.  Minimum Wage and Overtime Claims

Having found that Plaintiffs properly allege an employer-employee relationship with Defendants, I consider the allegations under specific provisions of the laws. First, Plaintiffs claim that Defendants violated the FLSA and NYLL's minimum wage requirements. Pursuant to both laws, an employee must be paid the minimum wage for the first 40 hours worked in a given week. 29 U.S.C. § 206(a); 12 N.Y.C.R.R. § 146–1.2 For hours worked in excess of 40, employees are entitled to be paid at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142–2.2.

To state a claim for failure to pay overtime compensation, a plaintiff "must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013). An employer who violates sections 206 or 207 of the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

Employers bear the burden to maintain proper records of the number of hours their employees work. 29 U.S.C. § 211(c). See also Kuebel v. Black & Decker Inc., 643 F.3d 352, 363

(2d Cir. 2011) ("[A] plaintiff establishes a violation of the FLSA by proving that he performed uncompensated work of which his employer was or should have been aware."). A plaintiff, however, may meet his burden of proof based only on his own recollection of hours worked. Id. at 362. See also Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946).

Plaintiffs allege that they were paid an hourly rate of $7.00. FAC ¶¶ 44, 51, 58. This rate falls below both the state and federal minimum wage. See 29 U.S.C. § 206 (federal minimum wage is $7.25 per hour); NYLL § 652 (lowest minimum wage in New York City was $10.50 per hour from 12/31/2016-12/30/2017, and $12 per hour from 12/31/2017-12/30/2018). Accordingly, I find that Defendants are liable for Plaintiffs' unpaid minimum wage payments.

Plaintiffs also allege that they each worked in excess of 40 hours per week. Plaintiff Jose Ramos allegedly worked an average of 63 hours per week; Plaintiff Francis Rivera 52.5 hours; and Guillermo Ignacio an average of 68 hours per week. Id. ¶¶ 43, 50, 57.[1] Because Plaintiffs allege that they typically worked in excess of 40 hours per week and received "no overtime compensation, regardless [of] the total number of hours worked," Plaintiffs have pleaded Defendants' liability for unpaid overtime wages. FAC ¶¶ 44, 51, 58.

### 2. Spread of Hours Pay

Plaintiffs next contend that Defendants are liable for "spread of hours" wages under NYLL §§ 190 and 650 and New York State Department of Labor Regulations § 146-1.6. FAC ¶¶ 109-110. The "spread of hours" refers to the "length of the interval between the beginning and end of an employee's workday." 12 N.Y.C.R.R. 146-1.6. On each day that the spread of hours is

---

[1] Plaintiff Ignacio's affidavit states that he worked an average of 67 hours per week. See Affidavit of Lorena Duarte, Ex. 4 ("Ignacio Affidavit"), ECF No. 59. But the calculation of his hours worked based on the schedule alleged in the FAC and his affidavit reflect an average of 68 hours per week. Id.; FAC ¶ 57. For purposes of calculating damages, the Court relies on its calculation of hours based on the schedule alleged.

greater than ten, an employee is entitled to one additional hour of pay at the minimum hourly rate. Id. The spread of hours regulation applies to employers that are "restaurants and all-year hotels." Id.

The complaint alleges that Defendants own a restaurant at 104 MacDougal Street, where Plaintiffs worked. FAC ¶¶ 42, 49, 56. Accordingly, as alleged, the spread of hours regulation applies to Defendants. Plaintiffs Ramos and Ignacio alleged that they worked shifts of ten or more hours in a day. FAC ¶¶ 43 & 57. Accordingly, Plaintiffs have sufficiently alleged that Defendants are liable for spread of hours wages for Plaintiffs Ramos and Ignacio. But Plaintiffs have not alleged any days on which Plaintiff Rivera would have been entitled to spread of hours pay. Rivera allegedly worked Tuesdays, Wednesdays, and Thursdays from 7 p.m. to 4:30 a.m. (9.5 hours), and Fridays, Saturdays and Sundays, from 11 a.m. to 7 p.m. (8 hours). Id. ¶ 50. Because the complaint does not state that Rivera ever worked more than ten hours in a work day, he is not owed spread of hours wages.

### 3. Failure to Reimburse for Expenses

Plaintiffs also argue that Defendants violated the FLSA by failing to reimburse them for expenses related to tools-of-the-trade. Id. ¶¶ 111-114. 29 C.F.R. § 531.35 provides that "if it is a requirement of the employer that the employee must provide tools of the-trade which will be used in or are specifically required for the performance of the employer's particular work" it is a FLSA violation in any week "when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." Plaintiffs claim that Defendants required them to purchase and maintain their own bicycles and that they were never reimbursed for this expense. FAC ¶¶ 47, 54, 61.

"Vehicles such as bicycles, motorcycles, and mopeds are considered 'tools-of-the-trade' if employees are required to possess and utilize them in the course of their employment." Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010). Plaintiffs allege that they were required to purchase and maintain a bicycle as a condition of their employment. FAC ¶¶ 47, 53, 61. Employees are entitled to a credit for "facilities that are 'primarily for the benefit or convenience of the employer.'" Id. (citing 29 C.F.R. § 531.3(d)(1)). Accordingly, Plaintiffs have adequately pleaded that they are entitled to be reimbursed for tools-of-the-trade expenses.

### 4.  NYLL Time of Hire Wage Notice Requirement

Next, Plaintiffs allege that Defendants failed to provide them with notice containing wage information, in violation NYLL § 195(1). See FAC ¶¶ 65, 71, 115-117. Section 195(1) requires an employer to provide employees a notice at the time of hiring, containing *inter alia* "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other . . . [and] allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances." NYLL § 195(1). Failure to provide this notice entitles an employee to recover "damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." NYLL § 198(1-b).

Plaintiffs state that "Defendants did not provide Plaintiffs with a wage notice[] at the time of their hiring," and that Defendants failed to "provide Plaintiffs . . . with written notices about the terms and conditions of their employment upon hire in relation to their rate of pay, regular pay cycle, and rate of overtime pay." FAC ¶¶ 65, 71. Plaintiffs, all of whom began working after the law took effect in 2011, have sufficiently pleaded that they were not provide with the

requisite notice and are entitled to statutory damages. <u>See</u> <u>Canelas v. A'Mangiare Inc.</u>, No. 13-CV-3630 (VB), 2015 WL 2330476, at *5 (S.D.N.Y. May 14, 2015) (employees who began working after April 9, 2011, are entitled to recover under § 195(1)(a)).

### 5. NYLL Pay Stub Requirement

Finally, Plaintiffs allege that Defendants violated NYLL by not providing them with required pay stub information "on or after each Plaintiff's payday." FAC ¶ 120. Section 195(3) of the NYLL requires that employers provide employees with certain pay stub information "with every payment of wages." NYLL. § 195(3). A plaintiff may recover $250 for each workday during which the employer failed to provide this information, not to exceed $5,000. <u>Id.</u> § 198(d-1). The FAC does not state the number of days that Defendants failed to provide the pay stub notice, but does allege that Defendants did not provide it, as required, with each paycheck. FAC ¶ 120.

## III. Damages

Because I find that Plaintiffs have sufficiently alleged Defendants' liability under the FLSA and NYLL, I consider whether Plaintiffs have established their entitlement to damages. <u>See</u> <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992) (damages following default must be established by the plaintiff). Determining the appropriate amount of damages "involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule." <u>Santana v. Latino Express Restaurants, Inc.</u>, 198 F. Supp. 3d 285, 291 (S.D.N.Y. 2016) (quoting <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999)) (internal quotation marks omitted). A court need not hold an evidentiary hearing to determine damages but "must 'take the necessary steps to establish damages with reasonable certainty.'" <u>Id.</u>

(citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997)). I consider each Plaintiff's right to damages separately.

### A. Plaintiff Ramos

#### 1. Backpay Under the FLSA and NYLL

In their damages calculation, Plaintiffs set forth two sets of damages for Plaintiff Ramos: one for the period from June 8, 2017, to July 8, 2017, and another for the period from January 1, 2018, to April 28, 2018. Duarte Aff., Ex. 15. Plaintiffs state that Ramos worked a total of 29 weeks during the first period, but the stated period is just four weeks long, and Plaintiffs' own calculations are therefore incorrect. Accordingly, I do not rely on Plaintiffs' calculation of Ramos's damages and instead base my calculations on the hours and pay rate set forth in Ramos's affidavit and the allegations in the FAC. Duarte Aff., Ex. 2 ("Ramos Affidavit").

Plaintiff Ramos states that he worked for Defendants from June 13, 2017, to April 27, 2018, and that he worked 63 hours each week. Ramos Aff. ¶ 3.[2] He alleges that he was paid on average $434.00 per week. Id. at ¶ 5. Because the statutory minimum wage increased on December 31, 2017, NYLL § 652, the Court divides Plaintiff Ramos' employment into two periods.

#### i.   Period I: June 13, 2017 – December 30, 2017

Period I lasted from June 13, 2017, to December 30, 2017, which is 28.57 weeks. Based on his schedule, he worked 172 days during Period I. See FAC ¶ 43.

The statutory minimum wage in New York City during Period I was between $10.50 and $11 based on the size of the employer. See NYLL § 652. Plaintiffs allege that Defendants

---

[2] Plaintiff Ramos also states that he "was required to work from 10 a.m. to 7 p.m. on Sundays occasionally." Ramos Aff. ¶ 3. Because he does not state how "occasionally" he worked on Sundays, and because he seeks damages for only 63 hours of work, which does not include any Sunday hours, I find that he has not established to a reasonable certainty that he worked any hours on Sunday.

employed "more than two employees," FAC ¶ 11, 16, 21, but do not plead that Defendants were "large employers" with at least 11 employees. See NYLL § 652(1)(1)(i)-(ii). It is Plaintiffs' obligation to establish their right to damages to a reasonable certainty. See Lenard v. Design Studio, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012). Accordingly, I find that Plaintiffs were entitled to and denied the minimum wage applicable to small employers in New York City with ten or fewer employees. NYLL § 652(1)(1)(ii). But because Defendants have not opposed Plaintiffs' motion, the Court accepts Plaintiffs' estimated hours as accurate. I recommend that Plaintiff Ramos be awarded $9,949.50 (($10.50 x 40 regular hours + $15.75 x 23 OT hours - $434) x 28.57 weeks) in unpaid minimum wage and overtime wages from Period I.

### ii.     Period II: December 31, 2017 – April 28, 2018

Period II lasted from December 31, 2017, to April 28, 2018, which is 16.86 weeks. Based on his schedule, he 100 worked days during Period II. See FAC ¶ 43. During Period II, the minimum wage applicable to small employers was increased to $12 per hour. See NYLL § 652(a)(ii). I find that Plaintiff Ramos is therefore entitled to $7,775.60 (($12 x 40 regular hours + $18 x 23 OT hours - $434) x 16.86 weeks) in unpaid minimum wage and overtime wages from Period II. In total, Plaintiff Ramos is entitled to $17,705.10 in unpaid wages.

### 2.   Spread of Hours Pay Under NYLL

Plaintiff Ramos provides his regular work schedule in his affidavit: 10 a.m. to 8:30 p.m. on Mondays and Wednesdays, 10 a.m. to 9 p.m. on Tuesdays, Fridays, and Saturdays, and 10 a.m. to 7 p.m. on Thursdays without an hour break. Ramos Aff. ¶ 3. Ramos claims that he was not paid spread of hours pay when he worked more than ten hours. Id. ¶ 6.

For purposes of calculating his spread of hours pay, I accept Plaintiff Ramos's statement of his regular hours and find he is entitled to spread of hours pay for five of his six regular work

days (Mondays, Tuesdays, Wednesdays, Fridays, and Saturdays). He worked only nine hours on

the Thursdays, which does not qualify for spread of hours pay. Accordingly, Plaintiff Ramos

should be granted $2,511.53 in spread of hours pay (($10.50 x 5 days x 28.57 weeks =

#1,499.93) + ($12 x 5 days x 16.86 weeks = $1,011.6)).

### 3. Liquidated Damages

Ramos also claims that he is entitled to liquidated damages under NYLL. Id. NYLL §

198(1-a) provides in relevant part:

> In any action instituted in the courts upon a wage claim by an employee . . . in which the
> employee prevails, the court shall allow such employee to recover the full amount of any
> underpayment [of wages], all reasonable attorney's fees, prejudgment interest as required
> under the civil practice law and rules, and, unless the employer proves a good faith basis
> to believe that its underpayment of wages was in compliance with the law, an additional
> amount as liquidated damages equal to one hundred percent of the total amount of the
> wages found to be due.

NYLL § 198(1-a). "The NYLL's liquidated damages provision mirrors the provision in the

FLSA, and courts in this circuit have found no substantive difference between the two standards

in their definition of 'good faith.'" Salustio v. 106 Columbia Deli Corp., 264 F. Supp. 3d 540,

556 (S.D.N.Y. 2017). Accordingly, to establish subjective good faith, "an employer must show

that it took active steps to ascertain the dictates of the [FLSA or NYLL] and then act to comply

with them." Id. (citing Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir.

2008)) (internal quotation marks omitted)). The employer bears the burden to show that it acted

in good faith. Id. See also Herman, 172 F.3d at 142 ("[T]he burden is a difficult one, with double

damages being the norm and single damages the exception."). Spread of hours damages are also

subject to additional liquidated damages. Reyes v. Cafe Cousina Rest. Inc., No. 18-CV-1873

(PAE)(DF), 2019 WL 5722475, at *6 (S.D.N.Y. Aug. 27, 2019), report and recommendation

adopted, 2019 WL 5722109 (S.D.N.Y. Oct. 7, 2019).

Because Defendants have not objected to offer a good faith basis for their underpayment of Plaintiffs' wages, I find that Ramos is entitled to an additional $20,216.63 in liquidated damages (100% of $17,705.10 in unpaid wages and $2,511.53 in spread of hours wages).

### 4. Failure to Provide Notice and Pay Stub Statements

Next, Ramos claims he is owed $10,000 for Defendants' failure to provide the required wage notice under NYLL § 195(1)(a) and pay stub information under NYLL § 195(3). As described above, NYLL § 198(1-b) entitles employees to recover $50 for each work day that the wage notice violations occurred or continued to occur, not to exceed $5,000, including costs and fees. NYLL § 198(1-b). Section 198(1-d) entitles employees to $250 for each work day that pay stub violations occurred, not to exceed $5,000. Ramos worked for a total of 272 days (172 days in Period I and 100 days in Period II).

With respect to the required wage notice, Ramos states that Defendants did not provide him "with a wage notice at the time of [his] hiring." Ramos Aff.  ¶ 8. Plaintiffs also state that Defendants failed to provide required disclosures "at all relevant times." Duarte Aff. ¶ 10. I presume for the purposes of the damages inquest that Defendants never provided Plaintiffs with the required wage notice and that Defendants' violation was therefore ongoing throughout Plaintiffs' employment. Accordingly, I recommend that Ramos be awarded the maximum of $5,000 for Defendants' continued violation of NYLL § 195(1)(a) ($50 x 172 days = $13,600).

Ramos also alleges that he was paid weekly and that Defendants "did not furnish [him] with a correct wage statement along with every payment of wages." Ramos Aff. ¶¶ 5, 9. See also Duarte Aff. ¶ 10. As Plaintiffs allege that Defendants' violation was continuing, I find that Ramos states is entitled to $250 for each day he worked entitling him to the maximum of $5,000 in penalties for violations of NYLL § 198(1-b) ($250 x 272 days = $68,000).

### 5. Tools-of-the-Trade Expenses

Plaintiff Ramos claims that he was required to "use and maintain [his] own bicycle" to make deliveries in the course of his employment. Ramos Aff. ¶ 7. He states that he spent $450.00 to purchase a bicycle and approximately $80.00 per month over the course of ten months to repair it. Id. The Court accepts that Ramos purchased and maintained the bicycle as a condition of his employment and that the costs were the amounts stated in his affidavit. Accordingly, I find that he is entitled to $1,250.00 in tools-of-the-trade expenses. See id.; Duarte Aff., Ex. 15 ("Plaintiffs' Damages Calculation"). Because tools-of-the-trade expenses are a separate category and not a component of unpaid wages, the Court does not recommend awarding liquidated damages based on these expenses. See Plaintiffs' Damages Calculation; Cocoletzi v. Fat Sal's Pizza II, Corp., 2019 WL 92456, at *15, n.6 (S.D.N.Y. Jan. 3, 2019), report and recommendation adopted, 2019 WL 92456, at *1 (S.D.N.Y. Jan. 3, 2019) (declining to award liquidated damages for tools-of-the-trade expenses where plaintiffs sought tools-of-the-trade damages as a separate category).

### 6. Prejudgment Interest

Finally, Plaintiff Ramos claims he is entitled to prejudgment interest on his unpaid wages from the midpoint of his employment on November 20, 2017, to January 22, 2019, when the Clerk of Court entered default. Plaintiffs' Damages Calculation; Duarte Aff. ¶ 34. The NYLL provides for an award of prejudgment interest in addition to liquidated damages. NYLL § 198(1-a); Underwood v. TAFSC Hous. Dev. Fund Corp., No. 18-CV-6664 (JPO), 2019 WL 5485211, at *5 (S.D.N.Y. Oct. 25, 2019) (citing Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999)). Prejudgment interest is available only on actual damages, not liquidated damages. Id.

Under New York law, the prejudgment interest rate is nine percent per year. NYLL § 198(1-a). "[W]here damages are incurred at various times, as is the case with unpaid wages over the course of several years, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." <u>Underwood</u>, 2019 WL 5485211, at *5 (quoting <u>Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.</u>, No. 13-CIV-3061 (JGK), 2014 WL 2624759, at *5 (S.D.N.Y. June 10, 2014)) (internal quotation marks omitted). The "reasonable intermediate date" is often the midpoint of a plaintiff's employment within the limitations period. <u>Id.</u> (citing <u>Pineda v. Tokana Cafe Bar Restorant Inc.</u>, No. 16-CV-1155 (JPO), 2017 WL 1194242, at *4 (S.D.N.Y. Mar. 30, 2017)).

I find that Plaintiff Ramos is entitled to $2,133.55 or nine percent interest on $20,216.63 from the midpoint of his employment to the Clerk's entry of default ($20,216.63 (back wages and spread of hours pay) x .09/365 x 428 (days from November 20, 2017, to January 22, 2019)).

In sum, Plaintiff Ramos is entitled to $53,816.80 ($22,350.17 in back wages and spread of hours pay plus interest, $20,216.63 in liquidated damages, $10,000.00 in penalties for violations of NYLL's wage notice and pay stub requirements, and $1,250.00 in tools-of-the-trade damages).

### B. Plaintiff Rivera

Plaintiff Francis Rivera worked for Defendants from January 20, 2018, to April 25, 2018, which is 13.57 weeks. FAC ¶ 49. Based on his schedule, Rivera worked a total of 81 days. <u>See</u> <u>Id.</u> at ¶ 50.

### 1. Backpay Under the FLSA and NYLL

Plaintiff Rivera worked an estimated 52.5 hours per week with 12.5 hours of overtime for 13.57 weeks. <u>See</u> Duarte Aff., Ex. 3 ("Rivera Affidavit"). Rivera alleges he was paid $300 per

week and that he should have been paid $13/hour for the first 40 hours and $19.50 per overtime hour. Rivera Aff. ¶ 5; Plaintiffs' Damage Calculation.[3] As described above, because Plaintiffs have not pleaded that Defendants had more than ten employees, I apply the minimum wage applicable to small employers in New York City during this period, which is $12/hour. But the Court accepts Plaintiffs' estimated hours as accurate because Defendants have not opposed. Accordingly, I recommend that Plaintiff Rivera be awarded $5,495.85 ($12 x 40 regular hours + $18 x 12.5 OT hours - $300) x 13.57 weeks) in unpaid minimum wage and overtime pay.

### 2. Spread of Hours Pay Under NYLL

Plaintiff Rivera alleges that he is owed $546 in spread of hours wages ($13 x 3 days x 14 weeks). Plaintiffs' Damages Calculation. In his affidavit, Rivera states that he worked Tuesday, Wednesday, and Thursday from 7 p.m. to 4:30 a.m., and Friday, Saturday, and Sunday from 11 a.m. to 7 p.m. According to this statement, Plaintiff Rivera never worked for Defendants in excess of 10 hours and has therefore not established his entitlement to spread of hours pay.

### 3. Liquidated Damages

Plaintiff Rivera requests that the Court award liquidated damages for 100% of his unpaid wages. Duarte Aff. ¶ 38. As described above, because Defendants have not objected to offer a good faith basis for their underpayment of Plaintiffs' wages, I find that Rivera is entitled to liquidated damages of $5,495.85.

### 4. Failure to Provide Notice and Pay Stub Statements

Plaintiff Rivera also claims he is owed $10,000 for Defendants' failure to provide the required wage notice under NYLL § 195(1)(a) and the required pay stub information under

---

[3] Plaintiffs' Damages Calculation states that Rivera's weekly salary was $280. See Plaintiffs' Damages Calculation, 4. Because this number is inconsistent with Rivera's own affidavit and the FAC, see Rivera Aff. ¶ 5 & FAC ¶ 51, I calculate his damages based on a $300 weekly salary.

NYLL § 195(3). Duarte Aff. ¶¶ 40. Rivera states that Defendants did not provide him with a wage notice when he was hired. Rivera Aff. ¶ 8. See also Duarte Aff. ¶ 10 ("At all relevant times, the Defendants have failed to provide Plaintiffs with written notices and written statements containing their rate of pay and other disclosures as required by the New York Labor Law."). As described above, I find that Defendants' violation was ongoing, and that Rivera is therefore entitled to $50 in penalties for each workday. Based on Plaintiff Rivera's affidavit, he worked six days per week totaling 81 work days. Accordingly, he is entitled to $4,050 in damages for Defendants' violations of NYLL § 195(1)(a) ($50 x 81 days = $4,050).

Like Ramos, Rivera also claims that Defendants "did not furnish [him] with a correct wage statement along with every payment of wages." Rivera Aff. ¶ 9. See also Duarte Aff. ¶ 10. Rivera states that he was paid weekly. Rivera Aff. ¶ 5. Because I find that Defendants' violation was continuing, I recommend that Rivera be granted $250 for 81 days of violations, entitling him to the maximum of $5,000 in penalties for violations of NYLL § 198(1-b) ($250 x 81 days = $20,250).

### 5.  Tools-of-the-Trade Expenses

Plaintiff Rivera states that he was required to "use and maintain [his] own bicycle" to make deliveries in the course of his employment. Rivera Aff. ¶ 7. He alleges he spent $200.00 to purchase a bicycle and approximately $30.00 per month over the course of four months to repair it. Id. The Court accepts that Rivera purchased and maintained the bicycle as a condition of his employment and that the costs were the amounts stated in his affidavit. Accordingly, I find that he is entitled to $420.00 in tools-of-the-trade expenses. Id.; Plaintiffs' Damages Calculation.

### 6. Prejudgment Interest

Rivera also alleges that he is entitled to prejudgment interest of nine percent on his back wages from the midpoint of his employment on March 9, 2018, to January 22, 2019, the day of the Clerk's entry of default. Duarte Aff. ¶ 41, Plaintiffs' Damages Calculation. For the same reasons as Plaintiff Ramos, I find that Plaintiff Rivera is entitled to $453.07 or nine percent interest on $5,760.00 from the midpoint of his employment to the Clerk's entry of default ($5,495.85 (back wages) x .09/365 x 319 (days from March 9, 2018, to January 22, 2019)). In total, Plaintiff Rivera is entitled to $20,893.99 ($5,928.14 in back wages plus interest, $5,495.85 in liquidated damages, $9,050 in penalties for violations of NYLL's wage notice and pay stub requirements, and $420.00 in tools-of-the-trade damages).

## C. Plaintiff Ignacio

Plaintiff Guillermo Ignacio was employed by Defendants from February 1, 2018, to May 7, 2018, which is 13.57 weeks. FAC ¶ 56. Based on his schedule, he worked 82 days. See Id. at ¶ 57.

### 1. Backpay Under the FLSA and NYLL

Plaintiff Ignacio worked an estimated 68 hours per week with 28 hours of overtime for 14 weeks. Ignacio Aff. ¶ 3; Plaintiffs' Damages Calculation. Ignacio states that he was paid $7 per hour and averaged $434 per week but that the appropriate minimum hourly rate at which he should have been paid was $13 and that the proper overtime hourly rate was $19.50. Id.; Plaintiffs' Damages Calculation. As described above, I will apply the minimum wage of $12 that was applicable to small employers in New York City during this period. NYLL § 652(a)(ii). But because Defendants have not opposed Plaintiffs' damages calculation, the Court accepts Plaintiffs' estimated hours as accurate. Accordingly, I recommend that Plaintiff Ignacio be

awarded $7,463.50 ($12 x 40 regular + $18 x 28 OT hours -$434) x 13.57 weeks) in unpaid

minimum wage and overtime wages.

### 2. Spread of Hours Pay Under NYLL

Plaintiff Ignacio alleges that he worked six "spread of hours" days in a week. <u>See</u>

Plaintiffs' Damages Calculation. But Ignacio's work schedule—Monday and Tuesday from 6

p.m. to 4 a.m., and Thursday, Friday, Saturday and Sunday from 6 p.m. to 6 a.m.—reflects only

four days on which his shift exceeded ten hours. Ignacio Aff. ¶ 3. Accordingly, I find that

Plaintiff Ignacio is entitled to $651.36 in spread of hours damages ($12 x 4 days x 13.57 weeks).

<u>See</u> Plaintiffs' Damages Calculation.

### 3. Liquidated Damages

Plaintiff Ignacio, like Ramos and Ramirez, requests liquidated damages for 100% of his

unpaid wages and spread of hours damages. Duarte Aff. ¶ 45. For the same reasons as the other

Plaintiffs, I find that Ignacio is entitled to liquidated damages of $8,114.86 (100% of $7,463.50

(unpaid wages) + $651.36 (spread of hours pay)).

### 4. Failure to Provide Notice and Pay Stub Statements

For the reasons described above, I find that Plaintiff Ignacio, who alleges that he worked

six days per week and was not provided proper wage notice when he was hired, Ignacio Aff. ¶¶

3, 8, is entitled to $50 in damages for each workday throughout his employment. Accordingly, I

recommend that he be granted $4,100 for 82 days of Defendants' continuing violations of NYLL

§ 195(1)(a) ($50 x 82 days). I also find that Ignacio is entitled to damages for Defendants'

violations of NYLL § 198(1-b). I therefore recommend he be granted the statutory maximum of $5,000 in penalties for pay stub violations ($250 x 82 days = $20,500).

### 5. Tools-of-the-Trade Expenses

Plaintiff Ignacio also states that he was required to "use and maintain [his] own bicycle" to make deliveries in the course of his employment. Ignacio Aff. ¶ 7. He claims that he spent $750.00 to purchase a bicycle and approximately $30.00 per month over the course of three months to repair it. Id. The Court accepts that Rivera purchased and maintained the bicycle as a condition of his employment and that the costs were the amounts stated in his sworn affidavit. Accordingly, I find that he is entitled to $840.00 in tools-of-the-trade expenses. Id.; Plaintiffs' Damages Calculation.

### 6. Prejudgment Interest

Like the other Plaintiffs, Ignacio requests prejudgment interest of nine percent on his back wages from the midpoint of his employment on March 21, 2018, to January 22, 2019, the day of the Clerk's entry of default. Duarte Aff. ¶ 48, Plaintiffs' Damages Calculation.[4] For the same reasons as Plaintiffs Ramos and Rivera, I find that Plaintiff Ignacio is entitled to $614.28 in prejudgment interest from the midpoint of his employment to the Clerk's entry of default ($8,113.86 (back wages and spread of hours pay) x .09/365 x 307 (days from March 21, 2018, to January 22, 2019)). In sum, Plaintiff Ignacio is entitled to $26,784.00 ($8,729.14 in back wages and spread of hours pay plus interest, $8,114.86 liquidated damages, $9,100 in penalties for violations of NYLL's wage notice and pay stub requirements, and $840 in tools-of-the-trade damages).

---

[4] The Duarte Affidavit states that Ignacio is owed prejudgment interest from September 29, 2018. Duarte Aff. ¶ 48. But Ignacio's own affidavit states that he worked for Defendants from February 1, 2018, to May 7, 2018, making the midpoint of his employment March 21, 2018. See Ignacio Aff. ¶ 2.

**IV.     Attorneys' Fees and Costs**

Both FLSA and the NYLL entitle a prevailing plaintiff to his reasonable attorney's fees

and costs. <u>Najnin v. Dollar Mountain, Inc.</u>, No. 14-CV-5758 (WHP), 2015 WL 6125436, at *4

(S.D.N.Y. Sept. 25, 2015) (citing 29 U.S.C. § 216(b); NYLL § 198(1–3)). The party seeking fees

bears the burden to demonstrate that his attorneys' fees are reasonable, and must provide the

court information to assess the fee application. <u>Reyes</u>, 2019 WL 5722475, at *8.

Plaintiffs seek $16,676 in attorneys' fees and costs. Duarte Aff. ¶ 60. Plaintiffs state that

they attached a copy of their attorneys' time records as Exhibit 16 to their filing, <u>id.</u> ¶ 51, but

Exhibit 16 reflects only $646 in service fees. <u>See id.</u>, Ex. 16. The Court assumes this omission

was in error and recommends that Plaintiffs be granted leave to file their attorney time and

billing records for review.

**CONCLUSION**

I recommend that Plaintiff Ramos be awarded $53,816.80 in damages, that Plaintiff

Rivera be awarded $20,893.99, and that Plaintiff Ignacio be awarded $26,784.00 in damages. I

also find that Plaintiffs have not established their entitlement to attorneys' fees and costs, but

recommend that Plaintiffs be granted leave to file their attorney time and billing records for

review.

_____

SARAH NETBURN

United States Magistrate Judge

DATED:        January 15, 2020
              New York, New York

\*                    \*                    \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Vincent L. Briccetti at the United States Courthouse, 300 Quarropas St., White Plains, NY 10601, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Briccetti. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).